1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**ATTORNEYS FOR FREEDOM LAW FIRM**
3185 South Price Road
Chandler, Arizona 85248
Phone: (480) 755-7110
Fax: (480) 857-0150
**Andrew C. Marcantel - SBN 031809**
Andy@AttorneysForFreedom.com
*Attorney for Defendant*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | ) Case No. CR-21-00600-PHX-DLR (DMF) |
| Plaintiff, | ) |
| | ) **SENTENCING MEMORANDUM;** |
| vs. | ) **MOTION FOR VARIANCE** |
| Eric Roy Rathbun II, | ) |
| Defendant. | ) |
| | ) |

Defendant, Eric Roy Rathbun II ("Mr. Rathbun"), by and through undersigned

counsel, hereby submits this combined Sentencing Memorandum and Motion for Variance in

support of his request this Court sentence him to a term of probation.

### MEMORANDUM OF POINTS AND AUTHORITIES

This Court is required to craft a sentence "sufficient, but not greater than necessary, to

comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]."  18 U.S.C. § 3553(a).  The

sentence must be crafted using a combination of Sentencing Guidelines ("Guidelines")

recommendations and non-guidelines factors.  "It is both important and legally necessary

under 18 U.S.C. § 3553(a) and under *Booker* that the district court conduct parallel analyses –

first employing the Guidelines, and then considering non-guideline sentencing factors under § 3553(a)." *United States v. Mix*, 457 F.3d 906, 913 (9th Cir. 2006).

## I.    Factual Background.

On October 18, 2022, Mr. Rathbun plead guilty to one count of False Statement During Purchase of a Firearm, in violation of 18 U.S.C. § 924(a)(1)(A), a Class D Felony offense.

## II.    Federal Sentencing Guidelines Calculation and Sentences Available.

Probation calculated a Total Offense Level 13, combined with a Criminal History Category I, yields a Guideline imprisonment range of 12 to 18 months. Presentence Investigation Report ("PIR") ¶ 157. The statutory maximum term of imprisonment is five years. 18 U.S.C. § 924(a)(1)(A). The Court may impose a term of supervised release of not more than three years. 18 U.S.C. § 3583(b)(2). Since the offense is a Class D Felony, the Guideline range for a term of supervised release is one year to three years. U.S.S.G. § 5D1.2(a)(2).

Because the applicable Guideline range is in Zone C of the Sentencing Table, Mr. Rathbun is ineligible for probation under the Guidelines. U.S.S.G. § 5B1.1. Nevertheless, statutorily, since the offense is a Class D Felony, Mr. Rathbun is eligible for not less than one nor more than five years probation. 18 U.S.C. § 3561(c)(1).

Pursuant to the written plea agreement and Fed. R. Crim. P. 11(c)(1)(C), the United States and Mr. Rathbun stipulate that the Mr. Rathbun's sentence shall not exceed the low end of the sentencing range as calculated under U.S.S.G. § 1B1.1(a). *See October 18, 2022*

*Plea Agreement*, pg. 2:19-21.  If the calculated low end of the range is 12 months, the United States and Mr. Rathbun stipulate the sentencing cap shall be 12 months and one day.  *Id.*  at pg. 2:21-23.  Nothing in the plea agreement shall preclude the Mr. Rathbun from moving for a downward departure, variance, or sentence below the cap, or this Court from imposing a sentence below the cap.  *Id.*  at pg. 2:25-27.

 Incarceration is greater than necessary to satisfy the sentencing purposes.  The United States Probation Office for the District of Arizona ("USPO") stated, "[a] custody sentence does not appear to be the only method of deterring [Mr. Rathbun] from committing crimes. The goals of sentencing required by statute may be able to be achieved by a sentence of probation, which would likely be sufficient, but not greater than necessary. . ."  PIR, ¶ 174.

 Mr. Rathbun requests a two-level variance to place him in offense level 11.  This variance will result in an advisory Guideline range in Zone B, rendering Mr. Rathbun eligible for probation under the Guidelines.  U.S.S.G. §5B1.1(a)(2).  The USPO recommended this Court sentence Mr. Rathbun to a sentence of three years probation, to reflect the seriousness of the instant offense, to promote respect for the law, and provide just punishment.[1]  PIR, pg. 28.  In addition, the USPO recommended a $2,000 fine, and a mandatory special assessment fee of $100.  PIR, pg. 28.

**Variance**

 Courts may impose a variance outside of the Guideline range after consideration of all

---

[1] The USPO justified its recommendation due to Mr. Rathbun's limited treatment needs, employment history, and adequate candidacy for supervision.  *Id.*  at pg. 28.  A sentence of probation would allow for a punitive measure by the court, in addition to allowing Mr. Rathbun to be supervised in the community.  *Id.*

relevant departure provisions. *Gall v. United States*, 552 U.S. 38, 49, 128 S.Ct. 586, 596 (2007). In determining whether a variance from the Guidelines is warranted, the District Court may consider, without limitation, any information concerning the background, character, and conduct of the defendant, unless otherwise prohibited by the Guidelines or other law. 18 U.S.C. § 3553(b). In considering the nature and circumstances of the offense, and the history and character of the defendant, the Court may look at various factors surrounding the transgression. *See generally, Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558 (2007). "[A] major departure [from the Guidelines] should be supported by a more significant justification than a minor one." *Peugh v. United States*, 569 U.S. 530, 537, 133 S.Ct. 2072, 2080 (2013).

A variance is supported by both the history and characteristics of Mr. Rathbun.

## III.    18 U.S.C. § 3553 Factors.

The Court may employ expansive discretion in choosing a sentence. In addition to the properly calculated Guideline range, there are several broad, enumerated factors for the Court to consider while determining appropriate punishment which is not greater than necessary. *See* 18 U.S.C. § 3553(a). "The United States Supreme Court has long recognized that sentencing judges 'exercise a wide discretion' in the types of evidence they may consider when imposing a sentence and that '[h]ighly relevant—if not essential—to[the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics.'" *Pepper v. United States*, 562 U.S. 476, 480, 131 S.Ct. 1229, 1235 (2011). Congress further expanded this principle, writing, "[n]o limitation shall

be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

The nature and circumstances of the offense and Mr. Rathbun's mitigation, are amongst several factors to be considered when imposing a sentence in this case. A sentence of probation along with associated fines and fees is sufficient to accomplish all the purposes of sentencing.

### A. Nature and Circumstances of the Offense.

In 2018, Mr. Rathbun was in a car accident, which caused him to develop whiplash. PIR, ¶ 140. He visited a chiropractor three to four times per week to alleviate his back and neck pain. PIR, ¶ 140. Mr. Rathbun was eventually prescribed a Arizona Medical Marijuana card for this condition. PIR, ¶ 140. Mr. Rathbun's marijuana use caused him to lose focus and motivation, leading to disagreements with his mother. PIR, ¶ 143. Between 2019 and 2020, Mr. Rathbun was unemployed, increased his marijuana use, and became involved with a bad group of friends. PIR, ¶ 138. Mr. Rathbun characterized this time in his life as chaotic. PIR, ¶ 138. During this time, Mr. Rathbun experienced increased levels of stress and anxiety. PIR, ¶ 138. In desperation to earn money and succumbing to peer pressure from his "friends," Mr. Rathbun decided to participate in the instant offense.

On October 26, 2022, Mr. Rathbun pled guilty to Count 76 of the 78-count Superseding Indictment. PIR, ¶ 5. Count 76 charged on or about October 27, 2020, Mr. Rathbun and Chris Oliver ("Oliver") knowingly made a false statement and representation to

Caswell's Shooting Range, which was licensed under the provisions of Chapter 44, Title 18, United States Code, concerning information required by the provisions of Chapter 44 of Title 18, United States Code, to be kept in its records.  PIR, ¶ 5.  Mr. Rathbun executed a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosive Form 4473.  PIR, ¶ 5.  He stated that he (1) resided at the address listed on Form 4473 while he resided at a different address and (2) was the actual transferee or buyer of the firearm and was not buying the firearm on behalf of another person, whereas Mr. Rathbun knew that he was buying each firearm on behalf of Chris Oliver.  PIR, ¶ 5.

### B.  Acceptance of Responsibility.

Mr. Rathbun clearly demonstrated acceptance of responsibility for the offense.  PIR, ¶ 122.  He assisted authorities in investigating and prosecuting his misconduct by timely notifying authorities of his intention to enter a guilty plea.  PIR, ¶ 123.  A probation officer interviewed Mr. Rathbun at the United States Probation office.  PIR, ¶ 113.  During the interview, Mr. Rathbun admitted involvement in the offense and agreed with the factual basis of the plea agreement.  PIR, ¶ 113.

### C.  Mr. Rathbun's Personal History and Youth.

Mr. Rathbun reported a pleasant childhood even though his parents separated when he was three years old.  PIR, ¶ 135.  He was raised primarily by his mother, with the assistance of his two half-sisters.  PIR, ¶ 134.  Mr. Rathbun has had no contact with his father since his parents' separation.  PIR, ¶ 134.

Mr. Rathbun and his mother moved to Arizona when Mr. Rathbun was approximately

six.  PIR, ¶ 135.  Mr. Rathbun's mother worked multiple jobs to make ends meet but always provided for his basic needs.  PIR, ¶ 135.  While his mother worked, his sister Amber primarily helped to care for him.  PIR, ¶ 135.  Mr. Rathbun's other sister Jaime was in and out of the home throughout his childhood.  PIR, ¶ 135.  Jamie struggled with alcohol addiction and was sent to rehabilitation facilities on multiple occasions during Mr. Rathbun's formative years.  PIR, ¶ 135.

When Mr. Rathbun was approximately 13 or 14, his mother learned he was smoking marijuana and kicked him out of the home.  PIR, ¶ 135.  He lived with Amber briefly before returning to his mother's home.  PIR, ¶ 135.  Mr. Rathbun dropped out of school after the 11th grade.  PIR, ¶ 145.  In 2015, Mr. Rathbun completed his general educational development certificate ("GED") at Rio Salado Community College in Phoenix.  PIR, ¶ 145. From 2018 to 2020, Mr. Rathbun worked for Ancorra College in Tempe, Arizona, as a financial aid officer on two separate occasions.  PIR, ¶ 153.  In 2019, Ancorra College laid Mr. Rathbun off for approximately six months.  PIR, ¶ 154.  During this time, he worked for Helser Brothers as a powder coater, but was terminated because he was not fast enough at his job.  PIR, ¶ 154.  That same year, Mr. Rathbun completed a 1,600- hour hairstyling program. PIR, ¶ 147.  He graduated from the program but has not yet obtained his license, which he plans on doing soon.  PIR, ¶ 147.

At the time of the offense, Mr. Rathbun was only 22 years old.  Courts recognize that youth renders an offender less culpable and more deserving of a lenient sentence.  *See e.g., Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455 (2012); *Roper v. Simmons*, 543 U.S. 551,

569-70, 125 S.Ct. 1183, 1195-96 (2005) (young people lack maturity and a sense of responsibility, leading to recklessness and impulsivity. . . and lack the ability to extricate themselves from crime-producing settings. . . thus, their actions are less likely to be evidence of irretrievable depravity.)  People ages 18-25, like Mr. Rathbun, have undeveloped gray matter and undeveloped white matter in the prefrontal cortex.[2]

As Mr. Rathbun grows and matures, he will become less susceptible to this type of peer pressure and risky, short-term thinking.  Mr. Rathbun is likely to age out of this youth-driven criminal behavior, making him less likely to re-offend.  Young people continue personality development into middle age, becoming more inclined towards pro-social behaviors.[3]  People generally show increased self-confidence, warmth, self-control, and emotional stability as they age.[4]

The change in personality traits helps explain why individuals like Mr. Rathbun are less likely to commit serious crimes as they age.[5]  This effect is magnified given Mr. Rathbun's supportive family network in place to assist him.  Mr. Rathbun has strong potential to grow into a more responsible, thoughtful adult, much more capable of resisting peer pressure into illegal activity.

**D.  Character of Mr. Rathbun.**

Mr. Rathbun has had ample time to reflect and understands that his current

---

[2] Brief for the American Medical Ass'n et al. as Amici Curiae in Support of Neither Party at 16–24, *Graham v. Florida*, 560 U.S. 48, 61–62, 130 S.Ct. 2011, 2022 (2010) (Nos. 08-7412, 08-7621).
[3] Brent W. Roberts & Daniel Mroczek, *Personality Trait Change in Adulthood*, 17 Current Directions Psychol. Sci. 31, 33 (2008).
[4] *Id*.
[5] U.S. Sentencing Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* at 10 (Dec. 2017).

circumstances are the result of his poor decisions and associations. Mr. Rathbun has used the past few years to reflect on essential changes he needed to make, including taking ownership of his actions, distancing himself from old friends that had an adverse influence on him, and engaging in behaviors that will benefit his future.

In early 2022, Mr. Rathbun began his life's fundamental transformation in earnest. In February 2022, after working various temporary and "odd" jobs, Mr. Rathbun obtained full-time employment with Fuerte Measuring and Grading Construction. *See May 24, 2022 Pretrial Services Report*, pg. 2. In April 2022, Mr. Rathbun moved in with his sister Amber and his mother. PIR, ¶ 136. Mr. Rathbun decided to move in with his family to distance himself from the negative influences he associated with. Notably, around this time, Mr. Rathbun decided to cease all marijuana use. Up until May 2022, Mr. Rathbun used marijuana daily. PIR, ¶ 143. Since his cessation, Mr. Rathbun has experienced diminished anxiety levels, an increased work ethic, and an improved relationship with his mother. PIR, ¶ 143. Mr. Rathbun maintains that if he were tested for drugs today, the results would be negative. *See May 24, 2022 Pretrial Services Report*, pg. 3. Mr. Rathbun's mother echoes his statement. *Id.*

In August 2022, Mr. Rathbun left the construction company for a higher paying job in the oil industry. PIR, ¶ 150. Mr. Rathbun began working as a "floor hand" at Integrity Oil Services in Texas. PIR, ¶ 149. Mr. Rathbun ultimately left the company when he was informed he could not intermittently reside in another state during his pretrial supervision. PIR, ¶ 149. In October 2022, Mr. Rathbun began working as a seasonal laborer for We Hang

Christmas Lights in Phoenix.  PIR, ¶ 148.  He currently works 60 hours per week for the company.  PIR, ¶ 148.  Mr. Rathbun recently began taking computer coding online classes from Harvard University to advance his skillset and increase his marketability.  PIR, ¶ 147.

Mr. Rathbun is prepared to serve and respectfully requests that this Court sentence him to probation.  While serving his sentence, Mr. Rathbun would like to return to work in the oil field industry if the terms of his sentence allow him to do so.  PIR, ¶ 139.  Alternatively, Mr. Rathbun plans on completing his cosmetology certification, earning his real estate license so that he may work with his sister, and completing more training in computer coding.  PIR, ¶ 139.  Mr. Rathbun plans to reside in Chandler, Arizona, and build his career while continuing to assist his mother, sister, and nieces.  PIR, ¶ 139.

Amber Evans ("Amber"), Mr. Rathbun's sister, describes Mr. Rathbun as "a positive contribution to society and a very important part of our family."  *See Letter from Amber Evans, sister*.  Amber admires Mr. Rathbun's selfless nature and tendency to put others first. *Id*.  Amber is also proud of Mr. Rathbun's work ethic, noting that their family values "an honest day's work."  *Id*.  Amber is grateful that Mr. Rathbun has an incredibly close relationship with her two young children.  *Id*.  She writes, "[Mr. Rathbun] has been beyond helpful. . .[He] will do things such as taking the kids to after school activities, make dinner, go on trips to the park, and help my daughter with homework."  *Id*.  Amber concludes by mentioning Mr. Rathbun's growth following the events at issue.  *Id*.  She states, "Mr. Rathbun has learned a lot from this awful situation he got himself into. . .[w]hen [Mr. Rathbun] does find time to spend with friends, it's with his friends that have a positive effect and the best

interest for [him]. . .I am glad he is learning to [utilize] better judgment of other people's

character and what other people's intent for [him]." *Id.*

Matthew Mulle ("Matthew"), Mr. Rathbun's relative, writes, "[Mr. Rathbun] never has

a bad word to say about anyone, and his kindness and generosity are unparalleled." *See*

*Letter from Matthew Mulle, relative*.  Aside from his selfless nature, Matthew admires  Mr.

Rathbun's work ethic.  *Id.*  He states, "[o]ur family has always believed in hard work,

integrity, and goodwill toward others, and [Mr. Rathbun] has retained all those beliefs.  He

knows what it means to do an honest day's work." *Id.*

Robyn Piorkowski ("Robyn"), Mr. Rathbun's family friend, writes, "I was surprised

and troubled to hear about his case as [Mr. Rathbun] has always been a good kid." *See Letter*

*from Robyn Piorkowski, friend*.  Robyn describes Mr. Rathbun as a "polite, funny, loyal,

thoughtful of others, and hardworking young man for the time I have known him."  Robyn

concludes by mentioning Mr. Rathbun's genuine remorse for his involvement in this case.

She writes, "[Mr. Rathbun] is incredibly remorseful for what he has done.  He has expressed

this many times, and I believe it has reflected in his efforts."

## CONCLUSION

Mr. Rathbun will serve any sentence this Court finds most just.  He respectfully asks

for the opportunity to prove to this Court that he can continue to build on the fundamental

changes he has made.

Mr. Rathbun respectfully requests this Court grant a variance of two levels to decrease

his offense level from 13 to 11 and sentence him to a term of probation so that he may

continue to advance his career and earning potential while being able to help support his

mother, and assist in raising his two nieces.  For the reasons set forth in this Sentencing

Memorandum, a variance to sentence Mr. Rathbun to probation is appropriate.


Respectfully submitted December 30, 2022

**ATTORNEYS FOR FREEDOM LAW FIRM**

By:  _/s/ Andrew C. Marcantel_
     Andrew C. Marcantel, Esq.
     *Attorney for Defendant*

CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2022, I filed the Original with the Clerk of the Court using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/CEF registrants:

Coleen Schoch, Esq.
Assistant U.S. Attorney


Emailed to chambers:

The Honorable Douglas L. Rayes

Rayes_Chambers@azd.uscourts.gov

Email to Co-Defendant's Counsel:

Julia Cassels
julia@juliacasselslaw.com
Attorney for Dion Delpino

Matthew Bartz
matthewbartz@gmail.com
Attorney for Michael Kelly
By: */s/ Sierra Long*